Filing # 43492810 E-Filed 07/01/2016 02:01:36 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NUMBER:
DIVISION:

ROBERT N. MARKLAND, as the Personal Representative of
the Estate of CAROLYN S. MARKLAND, Deceased,

        Plaintiff,

v.

INSYS THERAPEUTICS, INC., a Delaware Corporation,

        Defendant.
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

The Plaintiff, ROBERT N. MARKLAND, as Personal Representative of the Estate of CAROLYN S. MARKLAND, deceased, by and through his undersigned counsel, hereby allege the following against the Defendant, INSYS THERAPEUTICS, INC.:

### NATURE OF THE CASE

1. This is an action for damages in excess of the sum of Fifteen Thousand Dollars ($15,000.00) exclusive of interest and costs.

2. This is a wrongful death products liability action against the Defendant, INSYS THERAPEUTICS, INC., (hereinafter referred to as "Insys").

3. This action is brought pursuant to Section 768.16, et seq., for the wrongful death of CAROYLN S. MARKLAND, (hereinafter referred to as "the decedent").

4. At all times material hereto, ROBERT N. MARKLAND and CAROYLN S. MARKLAND, were husband and wife and resided in Jacksonville, Duval County, Florida.

5. The decedent, CAROLYN S. MARKLAND, died on July 3, 2014, as a result of having been prescribed and the taking of Subsys Fentanyl. The cause of her death was certified by the Duval County Medical Examiner as drug toxicity.

6. The Defendant, Insys, developed and produced Subsys which was approved for the specific treatment of breakthrough pain in cancer patients by the Food and Drug Administration on or about January 4, 2012.

7. The application to the FDA by Insys expressly states that the drug was intended to be prescribed to cancer patients suffering breakthrough pain. The use of this drug was not approved for any other purpose. The approval letter from the FDA specifically limited the use of Subsys for breakthrough pain caused by cancer.

8. At all times material hereto, the Defendant, Insys, negligently and unlawfully marketed Subsys to medical specialists who did not treat cancer patients but treated other chronic pain problems including migraine headaches and back pain. This off-label use was never approved by the FDA.

**THE DEFENDANT**

9. At all times material hereto, the Defendant, Insys, is and was a Delaware Corporation duly existing under and by virtue of the laws of the State of Delaware with its principal please of business located in Chandler,

Arizona. It was first incorporated in 1990.

10. The company Insys was and is a pharmaceutical company involved in the business of research, developing, testing, manufacture, production, promotion and the marketing of pharmaceuticals for distribution and sale and use by the general public, which includes the drug known as Subsys.

## JURISDICTION AND VENUE

11. The Defendant, Insys, conducts and transacts substantial business in the State of Florida, has committed tortious and wrongful acts within this state, and has otherwise performed acts within and/or without of this state giving rise to injuries and losses within this state, which subjects the Defendant, Insys, to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

12. Venue is proper in this Court pursuant to Section 47.051, Florida Statues, and it is believed that it has representatives located in the State of Florida, and the cause of action herein accrued in Duval County, Florida.

## SUBSYS FENTANYL

13. Subsys is a sublingual spray formulation of Fentanyl.

14. Fentanyl is an opioid agonist whose principal therapeutic action is analgesia and is more potent than morphine. It is a Schedule II controlled substance.

15. Subsys was and is supplied as a spray for sublingual

administration (liquid sprayed beneath the tongue). It is very fast and provides pain relief starting five minutes after taken by the patient.

16. The initial dose of Subsys to treat episodes of breakthrough cancer pain should always be 100 mcg. From this initial dose, the dose should be titrated to provide adequate pain relief using a single Subsys dose per breakthrough cancer pain episode with tolerable side effects. For each breakthrough pain episode if the pain is not relieved after 30 minutes, the patient may take only 1 additional dose of the same strength for that episode.

17. Opioids, such as Subsys, are powerful prescription medicines that can help manage pain when other treatments in medicines are not able to provide enough pain relief. Opioids also carry serious risk, including misuse and abuse, addiction, overdose and death.

18. Subsys Fentanyl should only be prescribed by physicians who are experienced in treating pain in cancer patients. Also, it should be used only to treat breakthrough cancer pain (sudden episodes of pain that occur despite around-the-clock treatment with pain medication). It should only be prescribed to patients who are taking regularly scheduled doses of another narcotic pain medication and who are tolerant to narcotic pain medication. According to the New Drug Application (NDA) and FDA Approval letter Subsys could be prescribed for cancer patients who were suffering from breakthrough pain caused by cancer.

19. Insys, according to the New Drug Application (NDA) filed by it disclosed that this drug was specifically intended to be used by cancer

patients with breakthrough cancer pain.

20. Subsequent to the approval of Subsys by the FDA an organization was formed by the FDA to establish guidelines and protocols for the prescribing of this drug, this is known as TIRF-Rems program. In order to prescribe Fentanyl the physician has to enroll in this program and the drug may only be prescription filled at a pharmacy that is enrolled in this program.

21. The major risk of taking Subsys Fentanyl is that this drug may cause respiratory depression. The prescribing of this drug to a person suffering from Chronic Obstructive Pulmonary Disease (COPD) is contraindicated.

22. Fatal respiratory depression has occurred in patients treated with Transmucosial Immediate-Release Fentanyl including Subsys.

23. According to the Medication Guide, required by the FDA and issued by the Defendant, Insys, Subsys can cause life-threatening breathing problems which can lead to death.

24. According to the aforesaid Medication Guide, Subsys is to be used to manage breakthrough pain in adults with cancer, who are already routinely taking another opioid pain medicine around-the-clock for cancer pain.

25. Because of the extreme potency of Subsys and the way it is delivered to the body, Fentanyl spray is extremely dangerous. Subsys Fentanyl is about 100 times more potent than Morphine and taking even a small amount of this drug can lead to respiratory distress and death.

## NEGLIGENT MARKETING OF SUBSYS

26. Subsequent to the approval of this drug Insys unlawfully and negligently began an aggressive marketing campaign to get physicians to prescribe Subsys for other uses including relieving chronic back pain.

27. Insys began to sale Subsys Fentanyl on March 26, 2012.

28. The Defendant, Insys, was negligent in its marketing of this new drug in the following respects:

(a) Many physicians, including Orlando Florete, M.D., a pain management specialist, was compensated by Insys to travel and speak to fellow physicians. This was known as the "Speakers Bureau" which was instituted by Insys as a means to compensate physicians and other health care providers to prescribe Subsys for off-label use to treat pain in patients who did not have cancer. The "Speaker Bureau" was a sham created by Insys intended to make these payments to physicians for prescribing this drug. It has been established that Subsys has paid out hundreds of thousands of dollars to entice and reward heath care provider who prescribed significant amounts of this drug.

(b) As part of the efforts of Insys to increase the number of physicians to prescribe Subsys Fentanyl, Insys adopted a practice of paying money to physicians, assistants and advanced nurse practitioners to prescribe Subsys Fentanyl. This included payment to an Advance Practice Registered Nurse (APRN) at a pain clinic located in Durby, CT, the amount of $83,000.00 to influence her in prescribing the medication Subsys Fentanyl to their patients. These payments were made beginning January,

2013, until March, 2015, and were hidden under the guise of the health care providers speaking at seminars regarding this drug.

(c) Insys did not require these physician compensated endorsers, to disclose to their patients that they were a paid advocate for the use of this drug for off-label purposes.

(d) The Defendant, Insys, negligently convinced physicians, such as family practice physicians, pain management specialists and doctors specializing in internal medicine that the physicians should and could write prescriptions for Subsys Fentanyl as an off-label use. This was unlawful conduct by Insys and was in violation of federal law.

(e) The Defendant, Insys, was negligent in aggressively promoting the off-label use or prescribing of this drug.

(f) As a result of the aggressive promoting of this off-label use of Subsys Fentanyl Insys sales went from about $15,500.000.00 to over $220,000,000.00 in a short period of time marketing Subsys.

(g) According to the FDA's Adverse Event Reporting System, Subsys Fentanyl was referenced in over 200 Adverse Event Reports resulting in many deaths since its January 4, 2012 FDA approval.

(h). At all times material hereto, the sales representatives working for Insys were compensated based on the volume of their sales of Subsys Fentanyl to all physicians. In other words, the more drugs they could sell to physicians who would prescribe Subsys the more compensation they received for their efforts.

(i) Insys also formed a "preauthorization unit" to assist physicians

in getting prescriptions approved by heath care insurance carriers and Medicare who would pay for this drug only if the patient had cancer causing breakthrough pain.

(j) The preauthorization unit was instructed by Insys management to change insurance codes indicating that the patient had cancer instead of non-cancer pain. This was negligent and fraudulent conduct designed soley to increase the earnings of Insys.

(k) The preauthorization unit staff/employees were paid bonuses in addition to their base salary for getting a significant number of Subsys approved by heath care insurance carriers each month for patients whether the patient's diagnosis was cancer or non-cancer pain. This was insurance fraud in violation of state and federal law.

(l) Sales representatives were paid extra bonuses for selling higher dosages of Subsys which generated higher income.

29. This Defendant, Insys, intentionally violated the requirements imposed by the FDA regarding the condition that this drug should be utilized to treat cancer patients with breakthrough cancer pain.

30 At all times material hereto, this Defendant, Insys, violated the provisions of the Medication Guide approved by the FDA regarding the specific use of Subsys Fentanyl which limited approval for use and treating cancer patients with breakthrough pain.

31. The aforesaid described marketing scheme was, at all times materials hereto, fraudulent, dishonest, sleazy and contrary to law and business ethics. This scheme was adopted and approved by the officers and

management staff of Insys. This marketing schmeme did not consider the safety and wellbeing of patients who were prescribed this extremely dangerous drug and was undertaken only to increase the earnings of Insys. This scheme placed company profits ahead of patients' safety.

### PLAINTIFF'S CLAIM FOR NEGLIGENT MARKETING

32. The Plaintiff adopts by reference and realleges paragraphs 1 through 31.

33. As the direct result of the aforesaid aggressive and fraudulent marketing scheme, physicians were enticed to prescribe Subsys Fentanyl to patients who did not have cancer.

34. In July, 2014, a pain management physician located in Jacksonville, Florida, Orlando G. Florete, M.D. prescribed Subsys Fentanyl to the decedent, CAROLYN S. MARKLAND. At that time, she was also taking an opioid known as Exalgo an opioid/narcotic prescribed by Dr. Florete which was being taken on a regular basis by her. The fact that the decedent was taking Exalgo, on a regular basis, qualified her to be a candidate for using Subsys Fentanyl.

35. On or about July 1, 2014, the decadent was suffering from a degenerative disc disease which caused her chronic back pain. Dr. Florete was treating her for this condition. Prior to that date he had prescribed Subsys Fentanyl to her, as needed, for pain. Thereafter, she took an additional dose on July 2, 2014, administered at Dr. Florete's office on July 2, 2014.

36. As a result of the administration of the Subsys Fentanyl the

decadent suffered respiratory distress and died in the early morning hours of July 3, 2014.

37. As a further direct and proximate result of the aforesaid negligence, the Plaintiff, ROBERT N. MARKLAND, individually, as the surviving husband of the decadent, has lost the support, services, comfort, society, companionship, protection and attention of his deceased wife from the date of her death and he will continue to suffer such losses in the future as well as his own mental pain and suffering from the date of her death forward.

38. As a further direct and proximate result of the aforesaid negligence, ROBERT N. MARKLAND, individually and as the Personal Representative of the Estate, has incurred funeral expenses resulting in the decedent's death and, in addition, the Estate has lost the earning and net accumulations of said decedent beyond her death, which would have been acquired over her natural life span as defined by Section 768.18(5), Florida Statutes.

WHEREFORE, the Plaintiff, ROBERT N. MARKLAND, as Personal Representative of the Estate of CAROYLN S. MARKLAND, deceased, demands judgment against the aforesaid Defendant, Insys, together with costs of this action and for all damages provided by law.

### DEMAND FOR JURY TRIAL

The Plaintiff, ROBERT N. MARKLAND, as Personal Representative of the Estate of CAROYLN S. MARKLAND, deceased, hereby demands trial by jury on all issues.

ALFORD LAW GROUP, P.A.

_____
**C. WAYNE ALFORD, ESQUIRE**
Florida Bar No. 103380
**CHARLES W. ALFORD, JR., ESQUIRE**
Florida Bar No.: 175625
8833 Perimeter Park Boulevard
Suite 104
Jacksonville, FL 32216
(904) 642-9899
(904) 642-9987 – Facsimile
Attorney for Plaintiffs